STATE Ex Rel. TRATHEN, Sheriff *v.* DUNKLE, County Treasurer

No. 2944

July 8, 1931.                    1 P. (2d) 108.

*L. D. Summerfield,* for Petitioner:

*Gray Mashburn,* Attorney-General, and *W. T. Mathews,* Deputy Attorney-General, for Respondent:

## OPINION

By the Court, SANDERS, J.:

This is a proceeding in mandamus, instituted in this court on the petition of Russell Trathen, as sheriff of Washoe County, for the purpose of obtaining an authoritative determination in his favor of his disputed right to retain as ex officio license collector 6 per cent of the gross amount of license moneys collected by him within the boundaries of the incorporated cities of Reno and Sparks, in Washoe County, under the provisions of an act approved by our last legislature commonly known as the "Open Gambling Law." Stats. 1931, c. 99, p. 165.

■ The facts are undisputed. The question involved

in the pleadings is whether the relator as sheriff of Washoe County is authorized to retain the commission provided for in section 33 of the license tax act of 1915 (section 6697, N. C. L. 1929), which provides as follows: "The sheriff, as ex officio license collector, shall receive, and is hereby authorized to retain (except when he is required to turn same into the county treasury for county purposes), as compensation for the collection of licenses, excepting sheep-grazing licenses, six per cent of the gross amount on each business license sold. Twenty per cent shall be allowed for the collection of sheep-grazing licenses according to the provisions of section 21 of this act."

The question involved is one purely of statutory construction. Section 2 of the open gambling law provides as follows: "Any person, firm, association or corporation desiring to conduct, operate, or carry on any gambling game, slot machine, or any game of chance enumerated or provided for in section one of this act shall, upon proper application to the sheriff of the county wherein it is proposed that such slot machine, game or games shall be conducted or operated, be issued a license for each particular device or game or slot machine under the following conditions and regulations. * * * "

Section 3 provides: "Licenses shall be prepared by the county auditor and shall be issued and accounted for as is by law provided in respect to other county licenses. * * * "

Section 4 provides: "On the first Monday of each month the sheriff shall pay over to the county treasurer all moneys received by him for licenses and take from the treasurer a receipt therefor, and he shall immediately on the same day return to the county auditor all licenses not issued or disposed of by him as is by law provided in respect to other county licenses; it is hereby made the duty of the sheriff in his county to demand that all persons, firms, associations and corporations required to procure licenses in accordance with this act take out and pay for the same, and he shall be

held liable on his official bond for all moneys due for such licenses remaining uncollected by reason of his negligence."

Section 5 provides: "All moneys received for licenses under the provisions of this act shall be paid, twenty-five (25%) per cent to the state treasurer for general state purposes, and seventy-five (75%) per cent to the county treasurer of the county wherein the same is collected for general county purposes; provided, where the license is collected within the boundaries of any incorporated city or town the county shall retain twenty-five (25%) per cent of said moneys, and the incorporated city or town shall receive fifty (50%) per cent of said moneys so collected, and the same shall be paid into the treasury of such incorporated city or town for general purposes; provided further, where the license is collected within the boundaries of any unincorporated city or town that is under the control of the board of county commissioners under and by virtue of an act entitled 'An act providing for the government of the towns and cities of this state,' approved February 26, 1881, the county shall retain twenty-five (25%) per cent of said moneys, and fifty (50%) per cent of said moneys so collected shall be placed in the town government fund for general use and benefits of such unincorporated city or town."

Section 15 provides: "All acts and parts of acts in conflict with the provisions of this act are hereby repealed."

Russell Trathen, as sheriff of Washoe County, contends and insists that under section 33, supra, it was the duty of D. W. Dunkle, as treasurer of Washoe County, under section 4 of the open gambling law, supra, to allow him to retain 6 per cent of the gross amount of moneys received for licenses from within the boundaries of the incorporated cities of Reno and Sparks, in Washoe County, to wit, the sum of $720.45.

The learned counsel for petitioner contends that the open gambling law is a license tax measure and must

be construed in connection with the license tax act of 1915; that section 33, supra, is a general law, prospective in its operation, and applies alike to all persons, subjects, and business within its general purpose and scope coming into existence subsequent to its passage. 25 R. C. L. 778. From this rule of statutory construction counsel insists that the compensation of sheriffs as ex officio license collectors as provided in section 33 refers to and applies to the compensation of sheriffs as license collectors under the open gambling law of 1931.

With all respect, we are of the opinion that there is no force or effect to the argument. It will be observed that under the open gambling law nothing more is required of sheriffs than that they shall receive the license fees tendered by applicants therefor and pay over all of the moneys so received to the treasurer of the county on the first Monday of each month and take from him a receipt therefor, and immediately on the same day return to the county auditor all licenses not issued or disposed of by him as is by law provided in respect to other county licenses. The licenses are dealt with as county licenses. The duty to pay over to the county treasurer all moneys received is unconditional. This provision affords evidence of the construction that sheriffs, in the performance of duties so simple and easy of performance, are not authorized to retain any part or portion of the moneys received by them for licenses. In other words, the duties are imposed as a part of the office of sheriff, and not as sheriffs as ex officio license collectors.

The fact that the moneys so received are payable to the state, county, city, or town, incorporated or unincorporated, as the case may be, for general purposes, is of no concern or interest to sheriffs, whose duties begin and end with the receipt of the moneys and their payment over to the treasurer of the county unconditionally.

■ It is suggested in argument that since the additional duties imposed upon sheriffs by the open gambling law are separate and distinct from the office of

sheriff, there is an implied obligation on the part of the state, its municipalities and quasi municipalities, to compensate sheriffs for the collection of licenses as ex officio license collectors as provided in section 33 of the license tax act of 1915. The argument at first seems plausible, but when it is considered that the open gambling law is a complete legislative enactment repealing all acts and parts of acts in conflict with it, furnishes sufficient ground for the construction that the legislature intentionally omitted to provide compensation for the additional duties imposed as a part of the office of sheriff.

From the foregoing considerations, it follows that the petitioner is not entitled to retain the commissions provided for in section 33 of the license tax act of 1915 for the collection of licenses under and by virtue of the open gambling law of 1931.

It is ordered that the petition for the writ of mandate be denied, and the proceeding dismissed, with costs.